Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | )<br>) |
| Plaintiff, | ) Case No. 1:04CR00045<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **DAVID JOE SHELTON,** | ) By: James P. Jones<br>) Chief United States District Judge |
| Defendant. | ) |

*Dennis H. Lee, Special Assistant United States Attorney, Tazewell, Virginia, for United States; David D. Walker, Salem, Virginia, for Defendant.*

In this criminal case, I set forth the reasons for denying the defendant's post-verdict motion for judgment of acquittal and for a new trial. I will sua sponte vacate one of the counts of conviction.

I

David Joe Shelton was charged in a Second Superseding Indictment with conspiracy to possess with the intent to distribute and distribute oxycodone, a controlled substance (Count One), possessing with the intent to distribute and distribution of oxycodone (Count Two), and engaging in a continuing criminal enterprise ("CCE") (Count Three). 21 U.S.C.A. §§ 841, 846, 848 (West 1999). A

jury convicted the defendant of all of these charges, and he thereafter filed a timely motion seeking a judgment of acquittal or a new trial. *See* Fed. R. Crim. P. 29(c), 33. The motion has been briefed and argued and is ripe for decision.

The government contended at trial that the defendant, the owner of a trucking business, illegally purchased and distributed controlled drugs, namely the prescription pain medications Tylox and OxyContin.[1] Much of the evidence against the defendant came from cooperating government witnesses, including former employees, who asserted that they had purchased the drugs from the defendant and sold them to others on his behalf. It was also claimed that the defendant supplied the drugs to his truck drivers as compensation. The defendant took the stand on his own behalf and admitted that he had been addicted to and had purchased the drugs in question, but denied that he had ever sold them or had directed others to sell for him.

The motion for judgment of acquittal contends that the defendant's conviction under the CCE statute should be set aside because there was insufficient evidence from which the jury could find that the defendant supervised five or more people. The defendant also seeks a new trial on all counts on the grounds that (1) the court should not have limited the defendant's inquiry into the potential sentence faced by

---

[1] Tylox and OxyContin contain oxycodone, a schedule II controlled substance. (Tr. 2-144, -147 to 48.)

a cooperating government witness; (2) the court failed to instruct the jury that proof of a mere buyer-seller relationship was insufficient to convict the defendant; and (3) the prosecutor failed to turn over exculpatory information.

II

A

Shelton's conviction under Count Three must be sustained if, viewed in the light most favorable to the government, there was substantial evidence to support it. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). In the context of a criminal conviction, the Fourth Circuit has defined substantial evidence as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)). In evaluating the sufficiency of the evidence, the court does not review the credibility of the witnesses, but assumes that the jury resolved all contradictions in the testimony in favor of the government. *See United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

A person is engaged in a continuing criminal enterprise if he commits a violation of the federal drug laws "in concert with five or more other persons with

-3-

respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C.A. § 848(c)(2)(A). The Fourth Circuit has stated that the terms "organize," "supervise," and "manage," as used in the CCE statute, should be applied "in their ordinary sense as understood by the public or the business community." *United States v. Butler,* 885 F.2d 195, 200 (4th Cir. 1989). In other words, these terms "imply the exercise of power or authority by a person who occupies some position of management or supervision." *United States v. Hall,* 93 F.3d 126, 130 (4th Cir. 1996), *abrogated on other grounds*, *Richardson v. United States*, 526 U.S. 813 (1999).

The evidence in this case clearly permitted the jury to find that the defendant organized, supervised, or managed at least five other persons. Franklin Payne testified that he and others had sold Tylox for the defendant (Tr. 1-24 to 25), and specifically named Harrison Street, Cameron Ramey, and Bradley Wade as other sellers for the defendant. (Tr. 1-30.) Harrison Street also testified that he sold Tylox for the defendant. (Tr. 1-60 to 61.) Amy Lester and Elizabeth Messer both testified that they and their respective husbands, Harold Lester and Gary Messer, sold OxyContin for the defendant. (Tr. 2-84 to -85, 103.) Federal agent Aaron Yoh testified that the defendant had admitted to him that Brian Perkins, Gary Messer, Harold Lester, and Jerry Palmer sold OxyContin pills for him. (Tr. 2-170.) The jury

-4-

could also have considered the evidence of the defendant's position as a business owner, his possession of large amounts of cash, and his trips to Mexico to buy drugs.

For these reasons, I will not enter judgment of acquittal as to Count Three. While the court has the power to grant a new trial "if the interest of justice so requires," Fed. R. Crim. P. 33, "[s]uch motions are left to the discretion of the district court and should only be granted in limited circumstances." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1405 (4th Cir. 1993). One reason to grant a new trial is if the evidence "weighs so heavily against the verdict that it would be unjust to enter judgment." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). That is not the present case.

B

The defendant argues that he should be granted a new trial because the court precluded him from cross-examining a cooperating government witness about the specific sentence that the witness might face.

The Supreme Court has held that a defendant's right to cross-examine cooperating witnesses about sources of potential bias is guaranteed by the Confrontation Clause of the Constitution. *Delaware v. Van Arsdall,* 475 U.S. 673, 678-79 (1986). However, the Court has also explained that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits

on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679. In applying these principles, the Fourth Circuit has stated that district courts may exercise broad discretion in limiting inquiry into the potential sentences faced by a cooperating witness. *See United States v. Cropp*, 127 F.3d 354, 359 (4th Cir. 1997) (affirming district court's limitation because of the prejudice that would result when a sympathetic jury learned that its guilty verdict would result in sentences of ten and twenty years). The key question is whether the defendant is provided with an opportunity to question a witness' "'subjective understanding of his bargain with the government,'" "'for it is this understanding which is of probative value on the issue of bias.'" *United States v. Ambers,* 85 F.3d 173, 176 (4th Cir. 1996) (quoting *Hoover v. Maryland,* 714 F.2d 301, 305, 306 (4th Cir. 1983)).

In *Cropp*, the district court ruled that the defendant could not ask about the specific penalties that the cooperating witnesses would have received absent cooperation, or about the specific penalties they hoped to receive due to their cooperation. 127 F.3d at 358. The Fourth Circuit upheld the district court's limitation, explaining that the "probative value from the jury's knowledge of the actual numbers of years faced was slight compared to its certain prejudicial impact."

*Id.* at 359.² Similarly, in this case the defendant was only precluded from discussing the precise length of the sentence that the government witness might expect, which could have prejudiced the jury.³ However, the defendant was not prevented from discussing the possible motivation of the witness or the fact that he was facing a lengthy prison term. Indeed, defense counsel was permitted to ask the government witness the following: "[N]ot only are you testifying to try to get a little help on–what . . . you've actually been charged with . . . [y]ou don't want to be charged with distribution . . . [o]r conspiracy . . . [and] [i]s it your hope, sir, that you will not have to go to jail at all?" (Tr. 1-91.) Therefore, the limitation was appropriate in order to prevent jury prejudice, and because the defendant had ample freedom to explore the witness' motive for testifying.

---

² The Fourth Circuit did not agree with the district court's other ground for disallowing the questioning, namely, that the questions would impinge on its discretion to impose a sentence. 127 F.3d at 358.

³ Moreover, I previously granted a motion in limine by the government ordering the defendant not to advise the jury of the possible punishment he was facing. This order would have been violated had the defendant been permitted to discuss the specific punishment the government witness expected because it would have been similar to that which the defendant might face. However, the court specifically noted to defense counsel that it was "[c]ertainly permissible . . . to ask the Government witnesses [whether] they're facing lengthy prison terms, or time in the penitentiary, or something like that . . . ." (Tr. 1-120.)

C

The defendant contends that the court erred by failing to instruct the jury that the mere buying of drugs is insufficient for conviction. He contends that the jury might have convicted him while still believing his testimony that he was only a buyer of drugs.

At trial, the defendant argued that a buyer-seller instruction was required only for Count One, charging the offense of conspiracy to possess with the intent to distribute or distribute oxycodone. (Tr. III-2 to 5.) In the present motion, the defendant adds that a buyer-seller instruction was required for the offenses charged in Counts Two and Three. In fact, as to the offense of engaging in a CCE (Count Three), Instruction 14 did contain such a charge, which stated that "to be properly counted toward the five individuals required for a continuing criminal enterprise conviction, there must be something more than a mere buyer-seller relationship between the defendant and these individuals. In other words, unless you conclude that the defendant took further steps to organize, supervise, or manage these five individual[s], you should return a verdict of not guilty." Similarly, as to the offense of possessing with intent to distribute oxycodone (Count Two), Instruction 13 stated that "[r]egardless of quantity, it is up to you to determine from the evidence whether

the quantities of drugs in this case were too large for personal consumption, or whether a smaller quantity or quantities establish only possession for personal use."

While the jury was not given a similar instruction as to the conspiracy charge, the jury was properly instructed as to what a conspiracy is, and could not have reasonably convicted the defendant of conspiring to distribute oxycodone if it had concluded that he was merely a buyer. As stated by the Fourth Circuit in a similar context, "Jurors are competent to understand and apply ordinary concepts . . . . [T]he conduct of a trial [is burdened] when it requires the elaboration of statutory elements which are already self-explanatory." *United States v. Hall,* 93 F.3d 126, 131 (4th Cir. 1996).

The issue is "whether, taken as a whole, the [challenged] instruction fairly states the controlling law." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). In assessing the adequacy of jury instructions, the court should view the instructions as a whole, as there is "'no ground for complaint that certain portions, taken by themselves and isolated, may appear to be ambiguous, incomplete or otherwise subject to criticism.'" *Smith v. Univ. of N.C.*, 632 F.2d 316, 332 (4th Cir. 1980) (quoting *Laugesen v. Anaconda Co.*, 510 F.2d 307, 315 (6th Cir. 1975)). "[A]n error in jury instructions will mandate reversal of a judgment only if the error is determined

to have been prejudicial, based on a review of the record as a whole." *Wellington v. Daniels*, 717 F.2d 932, 938 (4th Cir. 1983).

The central issue in the case for the jury was whether to believe the government's evidence that the defendant was a leader of the drug conspiracy or the defendant's claim that he was a mere drug user. Under the facts of the case, and viewing the instructions as a whole, the jury could not have been confused into believing that the defendant's mere purchase of illegal drugs was adequate proof of his membership in the conspiracy.

Moreover, the issue is moot, since for the reasons set forth later in this opinion, I will vacate the defendant's conviction under Count One.

D

Finally, the defendant argues that the prosecutor failed to turn over exculpatory information, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that a defendant's due process rights are violated when the prosecution suppresses evidence that is favorable to the accused where the evidence is material to guilt or punishment).

One of the government's cooperating witnesses, Melissa Rowe, testified that between 2002 and 2004 she had often purchased OxyContin from Jerry Palmer,

-10-

Shelton's co-defendant who pled guilty in this case.  She also testified that Shelton had been present "quite frequent[ly]" at Palmer's house when she had gone there to buy drugs.  (Tr. 2-48.)  She claimed that on occasion she had also bought drugs directly from Shelton at Palmer's house.  (Tr. 2-49, 56-57.)

Prior to trial, the government supplied to defense counsel for Shelton information that Teresa Christian, another confidential informant, had made undercover buys from Jerry Palmer on October 9, 10, and 14, 2003, at times when Shelton was not present.  Christian was not called as a witness by the government at Shelton's trial because she only had evidence against Palmer and did not know Shelton.  Shelton now argues that he did not know that Rowe was going to testify that Shelton and Palmer had frequently been together and if he had known that he would have called Christian to contradict Rowe's testimony.  The government had an obligation, Shelton claims, to tell him prior to trial that Rowe's testimony would have been contradicted by Christian.

In response, the government points out that it provided the defendant with the names and criminal histories of all its witnesses prior to trial.  (Mem. in Opp'n at 8-9.)  In addition, the prosecutor informed defense counsel that he would discuss any of the witnesses' anticipated testimony prior to trial.  (*Id.* at Ex. A & B at 2.)

-11-

Moreover, Rowe's testimony was not inconsistent with Christian's evidence. Rowe was clear that Shelton was not present each time she bought drugs from Palmer[4] and there is no evidence that Rowe and Christian were ever present at the same time. The fact that Christian was present with Palmer on just three occasions when Shelton and Rowe were not there does not contradict Rowe's testimony that Shelton was often present with Palmer. *Brady* is only violated if the evidence not disclosed was "material," that is, there is a reasonable probability that the disclosure of the evidence would have changed the outcome of the case. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). The circumstances present here do not meet that test.

---

[4] Rowe claimed that she only bought directly from Shelton for "a few months" and testified as follows:

Q And how often during that few months period of time did you buy from Mr. Shelton?

A Wasn't every day. Just, I mean, it varied, whether he would be there when I went down there. I really couldn't say to be exact.

(Tr. 2-49.)

III

The defendant was convicted by the jury of both engaging in a CCE and conspiracy, charges which covered the same criminal activity. While not argued by the defendant, it is settled that conspiracy to distribute a controlled substance is a lesser included offense of the offense of engaging in a CCE, and Congress intended to authorize only one punishment. *Rutledge v. United States*, 517 U.S. 292, 307 (1996). The proper remedy is to vacate the underlying conspiracy conviction. *Johnson v. United States*, 54 F.3d 1150, 1162-63 (4th Cir. 1995).[5]

IV

For the reasons stated, it is **ORDERED** as follows:

1. The defendant's Motion for Judgment of Acquittal and for a New Trial is DENIED; and

---

[5] Trial on both counts is permissible; it is only multiple punishments that are prohibited. *See United States v. Ziskin*, 360 F.3d 934, 948-49 (9th Cir. 2003); *United States v. Norman*, 214 F. Supp. 2d 1023, 1026 (S.D. Iowa 2002), *aff'd*, 354 F.3d 969 (8th Cir. 2004), *vacated and remanded on other grounds*, 125 S. Ct. 1049 (2005). It should be noted that a substantive drug offense is not a lesser included offense of a CCE and thus multiple punishments may be imposed. *See United States v. Riddick*, 156 F.3d 505, 511-12 (3d Cir. 1998).

2. The defendant's conviction of Count One of the Second Superceding Indictment is VACATED and said Count is DISMISSED.

ENTER: October 16, 2005

/s/ JAMES P. JONES
Chief United States District Judge